## Commonwealth v. Shovlin.

*J. Harold Flannery*, assistant district attorney, for Commonwealth.

*E. F. McGovern* and *Roy B. Pope*, for defendant.

VALENTINE, J., March 19, 1932.—Defendant, convicted of a violation of section 4 of the Act of May 20, 1921, P. L. 968, providing that "Every person who shall shoot at a human being in mistake for game or in mistake for any wild creature, and shall, through such shooting, kill a human being, shall be considered guilty of a misdemeanor," has filed motions in arrest of judgment and for a new trial.

The question raised by the motion in arrest of judgment is the constitutionality of the act. The motion for a new trial raises the questions (a) as to whether there was sufficient proof of the corpus delicti to warrant the admission of defendant's confession in evidence and (b) the sufficiency of the evidence to sustain a verdict of guilty.

1. In Com. *v.* Miller, 8 D. & C. 445, the constitutionality of the act in question was sustained in an opinion by Judge Fox, and without repeating what was there said, defendant's first and second reasons, which raise the same

questions as were there passed upon, are overruled. Defendant also attacks the constitutionality of the act upon the ground that it violates article III, section 3, of the State Constitution, which stipulates that "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." The act in question is entitled "An act giving additional protection to human beings in this Commonwealth, and imposing penalties upon those who may shoot at.or wound or kill a human being in mistake for either game or other wild creatures."

Defendant's counsel urge that the word "penalties" is misleading, that the word penalty ordinarily refers to a fine and does not carry with it any suggestion of a severe or lengthy imprisonment. The words "penal" and "penalty" have many different shades of meaning. In the municipal law of England and America they have been used in various senses. "Strictly and primarily they denote punishment, whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws:" 21 R. C. L., page 206, section 1.

The word "penalties" clearly indicates that the act provides some punishment for its violation and is sufficient to place any person concerned upon inquiry as to the provisions contained in the body of the act. The title of an act need not be a digest of the statute, but is sufficient if it describes the general subject in such terms as would lead an inquirer to an examination of the text of the statute: Com. v. Young, 57 Pa. Superior Ct. 521. Tested by this rule, the title is sufficient.

2. The state of the record at the time defendant's confession was offered in evidence is shown by the following excerpt from the charge:

"Now with reference to the statement or confession made by the defendant. At the time it was introduced by the Commonwealth, the Commonwealth had established that the deceased and the defendant had gone hunting together and that each carried a gun; that the deceased had received a wound in the head, evidently from a bullet, and that he was found lying in the woods some distance from the point where the defendant was located at the time he had been shot. It did not affirmatively appear from the Commonwealth's case, as it existed at that time, how the wound inflicted upon the deceased had been received, whether it had been received as a result of a shot fired by the defendant, and, if so, whether it had been received because the defendant shot at the deceased, mistaking him for game, or whether it was received by the defendant actually shooting at a deer and accidently hitting the deceased. . . . The death of the deceased as then shown by the Commonwealth was consistent with the fact that he had met his death as a result of a criminal act committed by the defendant, and we, therefore, allowed defendant's confession or statement to be received in evidence."

We think the ruling, that the confession was admissible, conformed to that of the Supreme Court as found in Com. v. Gardner, 282 Pa. 458, wherein the court (Mr. Justice Kephart) said, page 464: "It sometimes happens the circumstances attending the act may be consistent with crime, suicide or accident. In such cases, the corpus delicti is proven where the circumstances attending the death are consistent with crime, though they may also be consistent with accident . . . or suicide, and it is not necessary to show by affirmative proof that the latter two possibilities do not exist before evidence as to who did the act is admitted." The same principle is recognized in Com. v. Bishop, 285 Pa. 49. "The true rule in such cases is believed to be this: When the Commonwealth has given sufficient evidence of the corpus delicti to entitle the case to go to the jury, it is competent to show a confession made

by the prisoner connecting him with the crime. Under such circumstances, the jury should first pass upon the sufficiency of the evidence of the corpus delicti. If it satisfies them beyond a reasonable doubt that a crime has been committed, then they are at liberty to give the confession such weight as it is entitled to, taking into view the circumstances attending it, and the extent. to which it has been corroborated:" Com. *v.* Puglise, 276 Pa. 235, at page 238.

In the instant case the jury was told: "Confessions are not competent evidence until the Commonwealth has proven the corpus delicti, that is, the body of the crime. If the evidence of the Commonwealth, independently of the confession, satisfies you beyond a reasonable doubt that the deceased lost his life as a result of a bullet wound inflicted because he was shot at in mistake for game, then you may consider his (defendant's) confession or statement, and give it such weight as it is entitled to, taking into consideration the circumstances attending the making of it."

Defendant's first point reading as follows was affirmed: "Before the jury should consider the testimony as to the statements and admissions of the defendant, they should be satisfied beyond a reasonable doubt, from the evidence in the case, independent of such statements and admissions of defendant, that Seweryn Wareick came to his death by being shot in mistake for game or other wild creature." We think that the instruction given and the affirmance of defendant's point fully protected the rights of the defendant.

3. Defendant's proposition that the evidence was insufficient to warrant a conviction is without merit. The defendant and the deceased had gone hunting together, each carrying a gun. Defendant appeared at the home of William Kowalski and said the deceased had been shot; that he did not know how the deceased had been shot. Deceased was found lying in the woods with his gun fully loaded under him. Before going for Kowalski, the defendant had left his gun at the home of his grandfather, where it was later found by the officer. Defendant made contradictory statements concerning the shooting, but finally made a written confession that he had shot at a white object that looked like the tail of a deer and, after firing the shot, went to the spot and found the deceased lying on the ground wounded. This evidence, if believed, and in the main it was not seriously contradicted, warranted a verdict of guilty.

The jury was fully charged on the question of reasonable doubt and were told: "The first question for your consideration is, was the deceased shot by the defendant? If not, he should be found not guilty. If the deceased was shot by the defendant, was he shot by him in mistake for game? Did he shoot at the deceased believing he was shooting at a deer, as the Commonwealth contends, or did he actually shoot at a deer and accidently kill the deceased. If he shot at a deer and the shot resulted in the accidental death of the deceased, then the defendant would not be guilty; but if you are satisfied beyond a reasonable doubt that the defendant mistook the deceased for game and shot at him and death resulted from such shooting, the defendant is guilty of the offense charged in the indictment."

The act in question is a salutary piece of legislation. Adequate protection of human life demands that a hunter firing a shot should know that he is in fact shooting at game. An examination of the record leads to the conclusion that no reason has been advanced for disturbing the verdict.

Therefore, now, March 19, 1932, defendant's motions in arrest of judgment and for a new trial are denied.

From Frank P. Slattery, Wilkes-Barre, Pa.