## Commonwealth *v.* Felgoise, Appellant.

Argued September 27, 1937.

Before KELLER, P. J., CUNNING-HAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Wm. B. Rudenko,* with him *Harry Shapiro,* for appellant.

*John P. Boland,* with him *James W. Tracey, Jr.,* Assistant District Attorneys, and *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., November 10, 1937:

The appellant in this case was convicted of perform-

ing a criminal operation on Edna Mendys, an unmarried girl, 19 years of age.

The appellant's first contention in this appeal is that the Commonwealth failed to prove by competent evidence the corpus delicti.

Dr. Wadsworth, the coroner's physician, who made a post mortem examination on the body of Edna Mendys on February 18, 1935, the day after her death, testified for the Commonwealth that the deceased had been pregnant and that her uterus had been emptied; that the opening of the uterus appeared to be of the type requiring force; that there was no serious rip or tear, but some raggedness existed; that the cause of her death was sepsis following abortion.

It is conceded that an abortion may occur from a non-criminal as well as a criminal act. In *Com. v. Bricker*, 74 Pa. Superior Ct. 234, Dr. Wadsworth, who made a post mortem examination of the deceased woman in that case, testified, as he did here, that her death was due to an abortion. The jury was instructed that if they believed his testimony, they would be justified in finding that the corpus delicti had been proven. We held that instruction was not error. Wigmore on Evidence, 2d edition, §2072, in discussing the definition of "corpus delicti," states that it follows, "under the orthodox definition, that in homicide the fact of death, whether or not feloniously caused, is the 'corpus delicti'; in arson, the fact of burning, whether or not wilful." The law does not require the corpus delicti to be proven by direct evidence; that would oftentimes be very difficult; it may be shown by the attending circumstances: *Com. v. Puglise*, 276 Pa. 235, 120 A. 401. In *Com. v. Gardner*, 282 Pa. 458, 128 A. 87, it was held that the corpus delicti is proven where the circumstances attending death are consistent with crime, although they may also be consistent with an accident; that it is not enough to show a death: the

death must be consistent with a criminal act before a conviction can be sustained.

It was not disputed in this case that the deceased girl was under the defendant's professional care immediately before she went to the hospital. It was shown that she visited his office with her sister on several occasions and was taken alone by him to a back room where she remained from 15 minutes to a half hour; that when she entered the hospital she was suffering from septicemia. These were circumstances which, together with the testimony of Dr. Wadsworth, were entirely adequate to establish the corpus delicti.

The admissions of the defendant were, therefore, not necessary to, nor were they admitted as part of, the corpus delicti. As the corpus delicti was proven, his declarations then were admissible. True, Dr. Wadsworth was not called until after Stella Mendys, the sister of the deceased, had testified to the defendant's admissions, but that was immaterial. Judge TREXLER, in delivering the opinion in *Com. v. Bricker,* supra, said (p. 239) : "If there is corroboration between the statements of the defendant and the facts as sworn to by the doctor, who made the examination, that is all that is necessary and if this appears, the rule of evidence as to the order of proof is at end with the jury and they are left with nothing but the general duty in criminal cases to be convinced of the defendant's guilt beyond a reasonable doubt."

Stella Mendys testified that she accompanied her deceased sister to the defendant's office on a Saturday morning, the latter part of January, 1935, and told him that her sister was pregnant and Edna wanted an operation performed as she did not want to disgrace the family. After the doctor inquired as to the deceased girl's age and learned that she had been pregnant 2½ months, he said he charged "$150, sometimes $200" for such services. A fee of $100 was finally agreed upon and later the same day the witness paid

$50 on account and he agreed to perform the operation that night "little by little," stating it would take time. The witness accompanied her sister on her visits to the defendant's office three successive days. Tuesday, the doctor said it would not be necessary for Edna to return. He instructed her to stay in bed a couple of days, gave her some pills, and requested that the witness report to him daily. She told him the beginning of the following week that Edna was getting worse, and on Thursday he called at their home and made an examination of the patient's chest and stomach and told the witness her sister was suffering from intestinal influenza and "there was nothing to worry about." The witness requested that Edna be taken to a hospital. The defendant demurred, stating she would get as good treatment at home. He finally acceded to the request, made arrangements for her to go to the Jefferson Hospital and wrote on a slip "Intestinal influenza." The testimony does not show the purpose of this writing or to whom it was to be delivered. Two days later the girl died in the hospital.

The evidence was clearly sufficient to submit the question of defendant's guilt or innocence to the jury.

Complaint is also made that the learned trial judge erred in refusing permission to defendant to cross-examine Thomas Mendys and Stella Mendys, Commonwealth witnesses, concerning a civil suit which had been instituted by the parents of the deceased girl against defendant to recover damages for the death of their daughter, for the purpose of showing interest and bias. The father's testimony, in direct examination, was confined to the date of the beginning of Edna's illness and the date of her death, which did not of itself involve the defendant in any criminal conduct. The attorney for defendant attempted to prove on cross-examination of Stella Mendys that she had made arrangements with a lawyer to have the defendant sued civilly. She was not a party to the suit, nor in any-

wise financially involved therein. We think, therefore, that there was no reversible error in the court's sustaining the exceptions to this examination. At least it was harmless error, as the jury could have had no doubt as to the interest of these witnesses in this case and their feelings against the defendant. Even a criminal case should not be reversed where an error on the trial has not prejudiced defendant: *Cooper v. Metropolitan Life Ins. Co.,* 323 Pa. 295, 186 A. 125; *Com. v. Colacino,* 89 Pa. Superior Ct. 269.

The appellant's final assignment complains that the court erred in charging the jury that they should find the defendant guilty if they concluded that he had committed a crime "within the spirit and substance of the Act of Assembly." These words were severed from the other part of the sentence, which, in its complete form, is as follows: "For the purposes of this case it is sufficient to say to you that if you find the defendant has committed the crime with which he has been charged in the terms and language of course, as well as in the spirit and substance of the Act of Assembly, you may find him guilty." The Act of Assembly under which the defendant was indicted was read by the judge to the jury and they were told that if he had violated these express provisions he was guilty. The judge could have omitted the words complained of, but they were not prejudicial to the defendant but rather added to the Commonwealth's burden of showing a violation not only of the letter of the statute but also of its spirit.

The judge gave a clear, comprehensive charge to the jury, calling to their attention the salient facts and correctly instructing them as to the law involved. We find nothing therein which warrants criticism.

A careful consideration of this entire record leads us to the conclusion that the defendant had a fair trial, free of any reversible error.

Judgment is affirmed, and it is ordered that the ap-

pellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.