421 A.2d 361

**COMMONWEALTH of Pennsylvania**

v.

**George McCLOUGHAN, III, Appellant.**

Superior Court of Pennsylvania.

Argued June 9, 1980.

Filed Aug. 1, 1980.

Petition for Allowance of Appeal Denied Dec. 1, 1980.

600

George A. Heitczman, Bethlehem, for appellant.

James J. Narlesky, Assistant District Attorney, Bethlehem, for Commonwealth, appellee.

Before BROSKY, WATKINS and CIRILLO, JJ.*

WATKINS, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Northampton County, Criminal Division, by the defendant–appellant, George McCloughan, III, after his convictions by a jury on various charges involving sexual acts with minor females.

The defendant was the stepfather of Brenda and Rhonda Strouse, who were children of his wife's first marriage. Both girls were minors at the time of the trial, Brenda being fourteen (14) years of age and Rhonda being sixteen (16) years of age. At the trial the defendant was found guilty of the statutory rape of Brenda Strouse and guilty of corruption of a minor, charges as to both Brenda Strouse and Rhonda Strouse. He was acquitted of having involuntary deviate sexual intercourse with Rhonda Strouse and of statutory rape of Rhonda Strouse. During the trial the Commonwealth alleged that the defendant had engaged in various sexual acts with the two minor girls for a period of four (4) years until the girls' mother, Judith McCloughan, defendant's wife, learned of this activity, and took measures to put a stop to it. At the trial the Commonwealth intro-

---

* Judge VINCENT A. CIRILLO, of the Court of Common Pleas, of Montgomery County, is sitting by designation.

duced into evidence the fact that Judith McCloughan, shortly after observing the defendant fondling one of the girls, sought legal counsel and filed a spouse abuse petition against the defendant. Both girls and their mother testified as to this fact, over the objections of the defendant's counsel. Defendant complains on appeal that the introduction of the testimony about the spouse abuse petition was irrelevant to his case and that it prejudiced the defendant in the eyes of the jury because it led them to believe that a judicial determination establishing the defendant's participation in the onerous activities had been made. We do not agree. The Commonwealth produced this testimony in order to demonstrate that the children's mother had made a prompt complaint of the defendant's actions once she knew about them and had taken decisive action with regard to them. The testimony about the spouse abuse petition was relevant, therefore, because it tended to show that the mother acted promptly when she learned of the defendant's actions with her daughters. This was important to the Commonwealth's case because the defendant based part of his defense on the fact that the sexual abuse of the children was alleged to have occurred for a period of four years and that during that time nothing had been done about it. The defendant argued that this tended to prove that the sexual abuse had not occurred at all and that testimony regarding same was a recent fabrication. Evidence is relevant if it tends to establish some fact material to the case or tends to make a fact at issue more or less probable. *Commonwealth v. Davenport*, 462 Pa. 543, 342 A.2d 67 (1975). The making of a prompt complaint by the mother tended to disprove the defendant's defense and was highly probative evidence for that reason. Because its probative value outweighed any prejudicial effect it had on the defendant, we hold that the introduction of this testimony under the facts of this case was not error.

The defendant next claims that the trial court erred when it refused to grant a mistrial when Rhonda Strouse cried during her testimony. The trial court noted that the girl's crying episode lasted for only a brief period and that

she was able to continue her testimony without a recess. She then went on to testify for 41 pages of the trial transcript without further crying. Since the crying episode was brief and since the trial court, which observed the episode, obviously felt that the jury had not been prejudiced by the brief incident we hold that the trial court did not abuse its discretion in refusing to declare a mistrial because of it. See *Commonwealth v. Garrison*, 443 Pa. 220, 279 A.2d 750 (1971).

■ The defendant also claims that the court below erred when it permitted a representative from the Children's Bureau, Joanne Ferraro, to testify regarding an attempt to have Brenda Strouse medically examined. The defendant contends that such testimony was irrelevant, prejudicial to the defendant, and constitutes grounds for a new trial. We do not agree. Ferraro testified that she took Brenda Strouse to a gynecologist in an attempt to have her examined but that no examination was made. During her cross–examination, defendant's counsel had inquired of Brenda Strouse whether she had been medically examined to which she responded, "No, because the female doctor wouldn't do it." The purpose of Ferraro's testimony was to make clear to the jury the reason why Brenda Strouse was not examined at that time, the reason being that the gynecologist wouldn't perform the examination when she learned that the examination might result in her having to testify in court.

■ If a defendant delves into what would be objectionable testimony on the part of the Commonwealth, the Commonwealth can probe further into the objectionable area. *Commonwealth v. Stakley*, 243 Pa.Super. 426, 365 A.2d 1298 (1976). By ascertaining on cross–examination that Brenda Strouse had not been medically examined the defendant raised the question as to the reason for such in the minds of the jurors. Thus, the defense "opened the gate" for the testimony of Ferraro and cannot now claim that it was error for the trial court to allow the Commonwealth to explain to the jury why no medical examination had taken place.

Furthermore we find that the testimony of Ferraro, even if admitted into evidence in error, was harmless because it could not reasonably be said that it deprived the defendant of a fair and impartial trial. See *Commonwealth v. Palmer*, 463 Pa. 26, 342 A.2d 387 (1975).

The defendant next contends that the court below erred when it permitted a Dr. Calvin Weidner to testify over the defendant's objection that on January 26, 1978, he examined Rhonda Strouse and found that her hymen was not intact. On cross–examination the doctor testified that he could not determine when the hymen had been broken, could not determine whether it had been broken as a result of sexual intercourse, and testified that it could have been broken in ways other than by sexual intercourse. The defendant then moved to strike the doctor's testimony. His motion to strike was refused. The defendant argues that Weidner's testimony was not relevant because it did not prove conclusively that Rhonda Strouse had had sexual intercourse and that it was prejudicial to the defendant. The evidence to the effect that Rhonda Strouse's hymen was not intact is legally relevant because one of the elements of the crime of statutory rape is penetration. *Commonwealth v. Rhoads*, 225 Pa.Super. 208, 310 A.2d 406 (1973). The torn hymen is evidence which tended to support the Commonwealth's testimony to the effect that the defendant had had sexual intercourse with the girl. Of course, such evidence is not conclusive because there were many other ways by which the hymen could be torn other than by sexual intercourse with the defendant. Such other possibilities affect the weight to be given this evidence but do not render it inadmissible. Evidence of the torn hymen, standing alone, would not prove anything insofar as the defendant is concerned. However, when corroborated by Rhonda Strouse's testimony it became relevant as tending to support her testimony. Finally, it was the defendant's attorney who "opened the gate" to this testimony when he asked Rhonda Strouse on cross–examination whether or not she had undergone a medical examination in connection with the instant

case. She had answered that she had. The Commonwealth then presented the testimony of the doctor who performed the examination. We find no error in this. See *Commonwealth v. Stakley*, supra.

■ The defendant's next argument is that the trial court erred when it denied defendant's motion for a new trial on the ground of after–discovered evidence. After the trial the defendant presented this motion when Brenda Strouse recanted her trial testimony. A hearing was then conducted by the trial court. At the hearing, held on March 31, 1979, Brenda recanted her trial testimony under oath. The defendant now claims that he should be granted a new trial because his conviction of the statutory rape of Brenda Strouse is based upon a perjurer in that Brenda lied either at the trial or at the hearing where she recanted her trial testimony. The defendant cites *Commonwealth v. Mosteller*, 446 Pa. 83, 284 A.2d 786 (1971), in support of this contention. In that case it was held that a new trial will be awarded on the ground of after–discovered evidence where the evidence in question (1) has been discovered after trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching the credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted. The court went on to state that an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion. Recanting testimony is exceedingly unreliable and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. *Commonwealth v. Scull*, 200 Pa.Super. 122, 186 A.2d 854 (1962). In *Mosteller*, supra, the court reversed the court below and granted the defendant's motion for a new trial. However, in that case the testimony of the minor female prosecutrix who recanted her testimony was the sole evidence upon which the Commonwealth based its case, the

testimony of a disinterested witness and of the prosecutrix' mother supported the defendant's version of the incident in question, the prosecutrix admitted a month *prior to* the trial that she had fabricated her story in which she accused the defendant of various sex crimes, and she then recanted her testimony after the trial. Under those circumstances the defendant was given a new trial despite the trial court's denial of his motion for same. In the instant case Brenda Strouse never recanted her testimony prior to trial. Moreover her trial testimony was corroborated by Rhonda Strouse and by Judith McCloughan who had seen the defendant touching her private parts on January 20, 1978. The testimony adduced at the March 31, 1979 hearing further showed that Brenda, at the time of her recantation, was dating the son of the defendant's girlfriend. Throughout the recantation process the defendant's girlfriend played a major role in advising Brenda with regard to same. Brenda's alleged reason for testifying against the defendant at trial was that she had been threatened by Rhonda into doing so. However, she did not change her story until her involvement with the defendant's girlfriend's son and at which time Rhonda had not resided with her for some six (6) months. Brenda also testified that the Assistant District Attorney had threatened her but later admitted that he had merely advised her to tell the truth. In short, Brenda's recanting testimony was replete with inconsistencies and contradictions and was incredible. The trial court did not abuse its discretion when it denied defendant's motion for a new trial based upon said recantation.

 Defendant's last contention is that his sentence is unduly harsh. The defendant was convicted of one count of statutory rape, a felony of the second degree, and two counts of corruption of a minor, a misdemeanor of the first degree. He was sentenced to from one (1) day less than two and one–half (2½) years to two (2) days less than five (5) years at the county prison. The defendant concedes that his sentence is within the legal limits but claims that he should have been given probation. In passing sentence the trial

court had before it a full and complete pre–sentence report. The court stated that it felt the sentence was necessary "to neutralize" the defendant as a dangerous offender, to deter the defendant and others from this type of conduct, to protect the victims from the defendant and to afford the defendant the treatment he could receive at the county prison. The court below also stated the prison term was imposed because the defendant "did cause serious harm to an individual" and that the defendant "knew at the time that he was doing it". Thus, the court below did not abuse its discretion in sentencing the defendant as it did.

Judgment of sentence affirmed and defendant's motion for new trial denied.